UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
REUBEN SIMMONS,

               Petitioner,

               -against-

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICE,

               Respondent.
-------------------------------------------------------x

**NOT FOR PUBLICATION**

**MEMORANDUM and ORDER**

05-CV-1848 (SLT)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 1 2 2006 ★
P.M.
TIME A.M.

**TOWNES, United States District Judge:**

Petitioner, Reuben Simmons, brings this action through his mother, Carmena Simmons, and next friend, Owolabi Salis, Esq., seeking to stay his deportation and to be released from the custody of respondent, United States Citizenship and Immigration Service ("CIS"). Petitioner now moves, by order to show cause, for an injunction preventing petitioner's deportation to St. Vincent and the Grenadines. CIS responds by arguing that this Court lacks subject matter jurisdiction over this case. For the reasons set forth below, this Court concludes that the CIS is correct and that this action must be transferred to the United States Court of Appeals for the Third Circuit

## BACKGROUND

Petitioner was born on June 7, 1979, in St. Vincent and the Grenadines. Verified Complaint/Petition at ¶ 2, Ex. 1. In 1983, at the age of 4, petitioner emigrated with his family to the United States, where petitioner has resided ever since. *Id.* at ¶ 2. In 1992, when petitioner was 13 years old, his mother became a citizen of the United States. *Id.* at ¶¶ 4-5, Ex.2. According to petitioner's mother, an immigration official who interviewed her during the naturalization process informed her that petitioner would automatically become a citizen upon

her naturalization. *Id.* at ¶ 5. As a result, neither she nor petitioner made any effort to have petitioner naturalized until the Government instituted removal proceedings against petitioner.

In February 2004, petitioner – then 24 years old – was convicted in the Supreme Court of the State of New York, Kings County, of criminal sale of a controlled substance in the third degree, in violation of New York Penal Law § 220.39. In March 2005, petitioner was released from a New York State prison to the custody of the Immigration and Naturalization Service, which had already instituted removal proceedings against him pursuant to section 240 of the Immigration and Nationality Act ("INA").

In April 2005 – while the removal proceedings were still pending – petitioner's mother and attorney instituted the instant action on petitioner's behalf by filing a pleading entitled "Verified Complaint/Petition Pursuant to Local Rule 83.4" with this Court. Although no order of removal had yet been entered, petitioner's mother was unaware of the status of petitioner's removal proceedings and "believed her son [was] about to be deported." Verified Complaint/ Petition at ¶ 9. Accordingly, the pleading sought both an injunction prohibiting petitioner's deportation and an order releasing him from custody.

On June 2, 2005, petitioner, through his attorney, filed an application for citizenship (Form N-600) with the New York Service Office of the CIS, asserting that he was entitled to citizenship under INA § 321(a), former 8 U.S.C. § 1432 – a now-repealed statute which was in effect at the time of his mother's naturalization and which provided that, under certain circumstances, a child could automatically become a citizen of the United States upon the naturalization of his or her parent(s). On June 16, 2005, the District Director of the CIS's Philadelphia District Office denied petitioner's application, finding that petitioner was not a

her naturalization. *Id.* at ¶ 5. As a result, neither she nor petitioner made any effort to have petitioner naturalized until the Government instituted removal proceedings against petitioner.

In February 2004, petitioner – then 24 years old – was convicted in the Supreme Court of the State of New York, Kings County, of criminal sale of a controlled substance in the third degree, in violation of New York Penal Law § 220.39. In March 2005, petitioner was released from a New York State prison to the custody of the Immigration and Naturalization Service, which had already instituted removal proceedings against him pursuant to section 240 of the Immigration and Nationality Act ("INA").

In April 2005 – while the removal proceedings were still pending – petitioner's mother and attorney instituted the instant action on petitioner's behalf by filing a pleading entitled "Verified Complaint/Petition Pursuant to Local Rule 83.4" with this Court. Although no order of removal had yet been entered, petitioner's mother was unaware of the status of petitioner's removal proceedings and "believed her son [was] about to be deported." Verified Complaint/ Petition at ¶ 9. Accordingly, the pleading sought both an injunction prohibiting petitioner's deportation and an order releasing him from custody.

On June 2, 2005, petitioner, through his attorney, filed an application for citizenship (Form N-600) with the New York Service Office of the CIS, asserting that he was entitled to citizenship under INA § 321(a), former 8 U.S.C. § 1432 – a now-repealed statute which was in effect at the time of his mother's naturalization and which provided that, under certain circumstances, a child could automatically become a citizen of the United States upon the naturalization of his or her parent(s). On June 16, 2005, the District Director of the CIS's Philadelphia District Office denied petitioner's application, finding that petitioner was not a

her naturalization. *Id.* at ¶ 5. As a result, neither she nor petitioner made any effort to have petitioner naturalized until the Government instituted removal proceedings against petitioner.

In February 2004, petitioner – then 24 years old – was convicted in the Supreme Court of the State of New York, Kings County, of criminal sale of a controlled substance in the third degree, in violation of New York Penal Law § 220.39. In March 2005, petitioner was released from a New York State prison to the custody of the Immigration and Naturalization Service, which had already instituted removal proceedings against him pursuant to section 240 of the Immigration and Nationality Act ("INA").

In April 2005 – while the removal proceedings were still pending – petitioner's mother and attorney instituted the instant action on petitioner's behalf by filing a pleading entitled "Verified Complaint/Petition Pursuant to Local Rule 83.4" with this Court. Although no order of removal had yet been entered, petitioner's mother was unaware of the status of petitioner's removal proceedings and "believed her son [was] about to be deported." Verified Complaint/ Petition at ¶ 9. Accordingly, the pleading sought both an injunction prohibiting petitioner's deportation and an order releasing him from custody.

On June 2, 2005, petitioner, through his attorney, filed an application for citizenship (Form N-600) with the New York Service Office of the CIS, asserting that he was entitled to citizenship under INA § 321(a), former 8 U.S.C. § 1432 – a now-repealed statute which was in effect at the time of his mother's naturalization and which provided that, under certain circumstances, a child could automatically become a citizen of the United States upon the naturalization of his or her parent(s). On June 16, 2005, the District Director of the CIS's Philadelphia District Office denied petitioner's application, finding that petitioner was not a

citizen under § 321(a) because his father had not been naturalized until May 1999, when petitioner was over 18 years of age.

On July 5, 2005, an Immigration Judge ("IJ") in York, Pennsylvania (where petitioner was detained) found that petitioner's drug offense constituted an "aggravated felony" as defined in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43), and ordered petitioner deported from the United States.[1] The IJ's order relied, in part, upon the CIS's rejection of petitioner's derivative citizenship claim, and noted that petitioner was "timely appealing the District Director's denial of derivative citizenship to the [A]dministrative [A]ppeals [U]nit in Washington." Order of IJ Walt A. During, at 2.

Petitioner appealed the Immigration Judge's Order of Removal to the Bureau of Immigration Appeals ("BIA"). By order dated October 25, 2005, the BIA dismissed that appeal, expressly rejecting the petitioner's claim of derivative citizenship. The BIA stated:

> The only issue in this appeal is whether the respondent [petitioner herein] successfully established his claim of derivative citizenship via the naturalization of his mother on September 1, 1992, when the respondent was 13 years old. Although the respondent was admitted to the United States as a lawful permanent resident and his mother naturalized both prior to his 18th birthday, the record reflects that the respondent's parents were married when he was born in 1979 and have remained married without legal separation and/or divorce to this day. Further, the record reflects that the respondent's father did not naturalize until after the respondent's 18th birthday. Therefore, the respondent cannot establish derivative citizenship under former section 321(a) . . . .

BIA Decision dated Oct. 25, 2005 (attached as an exhibit to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion).

---

[1]This Order, a copy of which is appended as an exhibit to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion, is dated June 9, 2005, on the first page, and July 5, 2005, on each subsequent page. However, since the Order refers to events which occurred on June 16, 2005, the July 5, 2005, date must be correct.

3

In November 2005, petitioner appealed the BIA's decision to the Third Circuit Court of Appeals. At about the same time, petitioner filed an order to show cause in this Court, seeking an injunction restraining respondent from deporting petitioner. CIS responded to petitioner's motion by characterizing petitioner's pleading as a petition for a writ of habeas corpus challenging the order of removal, and arguing that the REAL ID Act of 2005 stripped this Court of subject matter jurisdiction over such petitions. In reply, petitioner implied that this action is not a challenge to the order of removal but, rather, seeks declaratory relief relating to his citizenship claim.

## DISCUSSION

Although the only motion currently pending before this Court is petitioner's motion for injunctive relief, CIS's responsive papers raise a substantial question as to whether this Court has subject matter jurisdiction in this case. Courts have an independent obligation to examine the basis of their jurisdiction, *see FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990), and must dismiss a case whenever it appears that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). If it appears from the pleading that the court lacks subject matter jurisdiction, the fact that the plaintiff paid the required fee "does not insulate the complaint from *sua sponte* dismissal for lack of subject matter jurisdiction." *Jones v. Langston,* No. 04-CV-6082T (FE), 2004 WL 1083242, at *2 (W.D.N.Y. May 5, 2004). Therefore, in light of respondent's argument that the REAL ID Act of 2005 stripped this Court of jurisdiction over this case, this Court must examine the basis, if any, of its subject matter jurisdiction before addressing petitioner's motion for injunctive relief.

In order to resolve the jurisdictional issue, this Court must first determine the nature of petitioner's pleading in this case. This pleading is certainly no model of clarity. First, the action is labeled both a complaint and a "Petition Pursuant to Local Rule 83.4" – the Local Civil Rule which sets forth the procedure for applying to stay the deportation of an alien. Second, the caption refers to the parties as "Petitioner" and "Respondent," but the body of the pleading refers to the parties as "Plaintiff" and "Defendant." Third, the jurisdictional allegations in paragraph 1 of the pleading both imply that the pleading is a complaint, by citing to 28 U.S.C. § 1331 and unspecified provisions of the "Immigration and Naturalization Act," and imply that the pleading is a petition for a writ of habeas corpus by citing to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and 8 U.S.C. § 1105a.

Respondent urges this Court to characterize this pleading as "a petition for a writ of habeas corpus and a motion for a stay of deportation." Defendant's Memorandum of Law in Opposition to Plaintiff's Motion at 4. This Court agrees that this is a reasonable characterization. As respondent notes, the pleading's jurisdictional allegations include cites to 8 U.S.C. § 1105a – the statute which, prior to the adoption of IIRIRA, authorized "any alien held in custody pursuant to an order of deportation . . . [to] obtain judicial review thereof by habeas corpus proceedings." The pleading also cites to IIRIRA – the Act which, at the time petitioner commenced this action in April 2005, contained the statutory provisions governing the judicial review of immigration orders. The IIRIRA "vest[ed] the courts of appeals with the authority to consider petitions challenging final orders commanding the removal of aliens from the United States," but "expressly preclude[d] the courts of appeals from exercising jurisdiction to review any final order of removal against any alien who is removable by reason of a conviction for certain criminal

5

offenses, including any aggravated felony." *Calcano-Martinez v. Immigration & Naturalization Serv.*, 533 U.S. 348, 350 (2001) (internal quotations and citations omitted). Thus, in April 2005, an alien wishing to challenge an order of removal predicated on his or her conviction for an aggravated felony was compelled to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the appropriate district court. *Id.*

Since the jurisdictional allegations also include a reference to 28 U.S.C. § 1331, the pleading's reference to 8 U.S.C. § 1105a and the IIRIRA alone might not compel the conclusion that petitioner's pleading is essentially a petition for a writ of habeas corpus. However, this conclusion is all but mandated by the nature of the relief petitioner requests. Aside from seeking a stay of deportation, petitioner seeks only his release from custody. The traditional function of the writ of habeas corpus is to "secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Indeed, as discussed *Calcano-Martinez*, a writ of habeas corpus pursuant to 28 U.S.C. § 2241 was the exclusive mechanism in April 2005 for securing the release of an alien facing deportation for an aggravated felony. *Id.*, 533 U.S. at 349-50. Therefore, the fact that the ultimate relief petitioner seeks is release from custody militates strongly in favor of construing petitioner's pleading as a petitioner for a writ of habeas corpus.

Since the Court construes petitioner's pleading as a § 2241 petition challenging petitioner's removal, this Court is precluded from exercising jurisdiction over this action. The REAL ID Act of 2005 ("RIDA"), which became effective in May 2005 – less than a month after this action was filed – "unequivocally eliminates habeas corpus review of orders of removal." *Marquez-Almanzar v. Immigration & Naturalization Serv.*, 418 F.3d 210, 215 (2d Cir. 2005). RIDA § 106(a)(1)(B), 8 U.S.C. § 1252(a)(5), provides, in pertinent part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28 [, United States Code,] or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter . . . .

8 U.S.C. § 1252(a)(5). Moreover, RIDA contains a provision requiring that district courts transfer any pending § 2241 petitions challenging final orders of removal to the appropriate court of appeals. Section 106(c) of the Act states:

> If an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case (or the part of the case that challenges the order of removal, deportation, or exclusion) to the court of appeals for the circuit in which a petition for review could have been properly filed under section 242(b)(2) of the Immigration and Nationality Act (8 U.S.C. § 1252), amended by this section . . .

This action was pending before this Court on May 11, 2005, the date on which RIDA was enacted. Therefore, this action must be transferred to "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252 (b)(3)(B). Since IJ Durling completed the removal proceedings in Pennsylvania, this case must be transferred to the Third Circuit. *See* 28 U.S.C. § 41.

This Court is not persuaded by the implication in petitioner's scanty reply papers that this Court has subject-matter jurisdiction because petitioner's pleading is not a petition for a writ of habeas corpus, but a complaint seeking an order declaring him to be a national of the United States. Typically, a person who claims to have acquired United States citizenship through his mother's naturalization can raise that claim in one of two ways. *See Anees v. Ashcroft*, No.

3:02CV1393 (DJS), 2004 WL 1498075, at *2 (D. Conn. July 2, 2004). First, he or she can raise this claim during the course of removal proceedings, as petitioner did in this case. *Id.* Second, a person can proceed administratively: applying for a certificate of citizenship by filing Form N-600, appealing to the Administrative Appeals Unit ("AAU") if that application is denied, and filing an action for a declaratory judgment pursuant to 8 U.S.C. § 1503 if the appeal to the AAU is unsuccessful. *Id.* However, if removal proceedings are already pending, the latter alternative is no longer available. "[O]nce removal proceedings have been initiated, a petition for review under 8 U.S.C. § 1252(b)(5) is the only avenue by which a person may seek a judicial determination of his or her status as a national of the United States." *Chau v. Immigration & Naturalization Serv.*, 247 F.3d 1026, 1028 n. 2 (9th Cir. 2001); *see Benjamin v. Bureau of Customs*, 401 F.Supp.2d 184, 184 (D. Conn. 2005). Indeed, 8 U.S.C. § 1503(a) expressly provides that a declaratory judgment action may not be instituted if nationality is put at issue by removal proceedings.

Since removal proceedings had already been commenced at the time petitioner filed this action, and since petitioner's nationality was at issue in those proceedings, petitioner could only obtain review of his nationality claim through 8 U.S.C. § 1252(b)(5). *See Chau*, 247 F.3d at 1028 n. 2; *Benjamin*, 401 F.Supp.2d at 184; 8 U.S.C. § 1503(a). Section 1252(b)(5) provides:

> If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court [of appeals] shall decide the nationality claim.
>
> \* \* \*
>
> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court [of appeals] shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner

8

resides for a new hearing on the nationality claim and a decision
on that claim as if an action had been brought in the district court
under [8 U.S.C. § 2201].

Therefore, regardless of whether petitioner's pleading is characterized a petition for a writ of habeas corpus to challenge the order of removal or a petition for review under 8 U.S.C. § 1252(b)(5) to determine petitioner's citizenship, this action would have to be transferred to the Third Circuit.[2]

## CONCLUSION

For the reasons set forth above, the Clerk of Court is hereby directed to transfer this case to the United States Court of Appeals for the Third Circuit, where petitioner may seek to consolidate it with *Simmons v. Attorney General*, No. 05-5094, if that appeal is still pending before the Third Circuit. After the transfer, the Clerk of Court shall close this case. That provision of Rule 83.1 of the Local Rules of the Eastern District of New York which requires a five-day delay is waived.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
June 5, 2006

---

[2] Even if removal proceedings had not already been commenced by this time this action was filed, this Court would decline to construe petitioner's pleading as an action for declaratory relief. The pleading does not allege either 8 U.S.C. § 1503 or 28 U.S.C. § 2201 as a basis for jurisdiction, and does not request declaratory relief.

9